FLORENCE HABERL, Ex'r of the Estate of Bertha Fisher, Deceased, Plaintiff and Counterdefendant-Appellee, v. THE COUNTY OF MONROE, *et al.*, Defendants and Counterclaimants-Appellants (Roger Schaefer, *et al.*, Defendants and Counterdefendants-Appellees).

Fifth District   No. 5—85—0195

Opinion filed April 9, 1986.

Dennis Doyle, State's Attorney, of Waterloo, for appellant County of Monroe.

Crowder & Scoggins, Ltd., of Columbia (Floyd E. Crowder, of counsel), for appellant St. Paul United Church of Christ.

Arlie E. Traughber, of Columbia, for appellee Florence Haberl.

Jay M. Huetsch, of Adams & Huetsch, of Waterloo, for appellees Roger Schaefer and Eva Schaefer.

Thomas A. LeChien, of LeChien & Associates, Ltd., of Belleville, for appellee Raymond Korves.

JUSTICE WELCH delivered the opinion of the court:

Florence Haberl, as executor of the estate of Bertha Fisher, deceased, commenced this action in the circuit court of Monroe County to construe decedent's will and codicil with respect to the payment of Federal and Illinois estate taxes. The matter was tried without a jury. The court concluded that the burden of those taxes fell entirely upon the residuary legatees under the will. The residuary legatees, the county of Monroe, owner and operator of the Monroe County Nursing Home of Waterloo, and St. Paul United Church of Christ, appeal. We affirm.

The facts are not in dispute. Decedent died on June 5, 1984. Her will, dated July 30, 1975, and codicil dated October 11, 1978, were admitted to probate. The will and codicil were as follows:

Paragraph First of the will directed that funeral expenses and decedent's debts be paid.

Paragraph Second concerned the grave monument.

Paragraphs Third through Eighth concerned specific minor bequests to certain individuals.

In Paragraph Ninth decedent bequeathed "unto each of the children of my tenants, Herbert O. Schaefer and Raymond Korves, who may be living at my death," the sum of $1,000; and also $5,000 to Dorothy Schaefer, wife of Herbert O. Schaefer, and $5,000 to Elberta Korves, wife of Raymond Korves.

In Paragraph Tenth decedent canceled the indebtedness remaining upon a contract for deed and directed that the real estate be conveyed to the purchasers.

Paragraphs Eleventh and Twelfth concerned several minor bequests of personal property, including one to Rita Schaefer, after which eight named individuals, including Dorothy Schaefer and Elberta Korves and "my then living aunts," were to be permitted to select such items as they desired of the remaining furniture and household furnishings.

Paragraph Thirteenth provided for establishment of a trust for the benefit of Jill Smith. The corpus of the trust was $30,000. Upon the death of Jill Smith, the principal of the trust and any undistributed income was to be paid over to St. Paul United Church of Christ, appellant herein.

Paragraph Fourteenth, as modified by the codicil, was as follows:

"FOURTEENTH: I give unto Raymond Korves, or his wife if he shall have predeceased me, or his children if both he and his wife shall have predeceased me, provided any of said named persons be at my death tenants thereon, the right to purchase

the farm on which they may be tenants for the sum of Forty Thousand Dollars ($40,000.00). They shall have five years in which to pay such purchase price and any unpaid balance shall bear interest at the rate of 4% per annum. \*\*\*. If, individuals provided herein are tenants on said real estate at the time of my death, and do not desire to purchase the real estate in accordance with provisions hereinabove set forth, then, they shall be entitled to payment for amounts so expended by them for construction of buildings on the premises."

Paragraph Fifteenth was revoked by the codicil and the following inserted in its place:

"FIFTEENTH: I give to Roger Schaefer and Eva Schaefer, if she shall then be his wife, and, if the said Roger Schaefer be my tenant thereon at my death, the right to purchase my Bottom Farm, on which he is the tenant, for the sum of Sixty Thousand and 00/100 Dollars ($60,000.00), and give them five (5) years in which to pay such purchase price, they to pay interest at the rate of four per cent (4%) per annum on any unpaid balance. Notice of such intention to purchase shall be given to my Executor within sixty (60) days after my said Will shall have been admitted to probate and an executor to have qualified. If, at the time of my death, Roger Schaefer shall not be my tenant on said Bottom Farm, or, if the said Roger Schaefer, being my tenant, does not desire to purchase said real estate, then he shall be entitled to reimbursement for any sums expended by him for construction of buildings on the premises. \*\*\*."

Paragraphs Sixteenth through Eighteenth of the will were as follows:

"SIXTEENTH: If none of my tenants shall exercise the right to purchase farms as set out above, then such farm or farms, together with any other real estate which I may own, shall be sold at public auction to the highest and best bidder and the proceeds thereof to become a part of the residue of my estate and to be disposed of as therein provided.

SEVENTEENTH: All bequests and devises made herein on which there may be inheritance tax due shall be net to such legatees and devisees, and any inheritance tax due and assessable to such devisee or legatee shall be paid out of the residue of my estate.

EIGHTEENTH: All of the rest, residue and remainder of my estate I give, devise and bequeath, in equal shares, to the St.

Paul United Church of Christ, of Columbia, Illinois, and the Monroe County Nursing Home, of Waterloo, Illinois, as a memorial to myself and to my deceased parents, Mr. and Mrs. Charles Kettler."

Paragraphs Nineteenth and Lastly concerned the nomination and authority of the executor. The codicil added a paragraph Twentieth to the will, which provided a bequest of $10,000 to the city of Columbia "for the purposes of its Bolm-Schuchkraft City Park *** to be designated as a memorial for myself." Neither the will nor the codicil expressly refers to estate taxes, and neither document identifies its preparer.

Raymond Korves and Roger and Eva Schaefer exercised their rights to purchase the farms. According to an appraisal in evidence, the fair market value of the farm purchased by Mr. Korves was $222,224.31; the fair market value of the "Bottom Farm" was $619,253, plus a building ($4,578) and a mooring lease ($145,000). A preliminary draft of a Federal estate tax return indicated the total gross value of the estate for estate tax purposes was $1,339,037, which would result in estate tax liability of $349,965. Mrs. Haberl testified that the specific devises and bequests and payment of expenses and estate taxes would result in a projected estate deficit of $16,000.

In the order appealed from, the circuit court ordered that the executor pay Federal and Illinois estate taxes and estate administration expenses out of the residue of the estate. The county of Monroe and St. Paul United Church of Christ appeal.

■ The starting point of our analysis is the "burden on the residue" rule. Where a will is silent as to the payment of taxes or other debts, Illinois case law requires that payment first be made from the residue of the estate. This was the rule in 1975, when testator's will was executed (*In re Estate of Phillips* (1971), 1 Ill. App. 3d 813, 815, 275 N.E.2d 685, 687); this court has recently reaffirmed it (*In re Estate of Fenton* (1982), 109 Ill. App. 3d 57, 61-62, 440 N.E.2d 222, 225; *In re Estate of Maddux* (1981), 93 Ill. App. 3d 435, 436-37, 417 N.E.2d 266, 268-69; *In re Estate of Britt* (1983), 112 Ill. App. 3d 186, 188, 445 N.E.2d 367, 369); and this court has expressed the belief that Illinois lawyers have long relied on this rule and that "countless wills have been drafted on this assumption" (*In re Estate of Phillips* (1971), 1 Ill. App. 3d 813, 815, 275 N.E.2d 685, 687). The instant will expressly directs payment of inheritance taxes (there are none due with respect to this estate, the Illinois inheritance tax having been abolished) and is without express comment on the subject of estate taxes.

■■ ■ Appellants contend that the will shows testator's intent that estate taxes should not be paid from the same fund as inheritance taxes. The difference between "estate" tax and "inheritance" tax is well-established. The Federal estate tax is levied against the decedent's estate as a whole, and is paid by the executor, whereas the inheritance tax (if any) is levied individually upon each beneficiary in an estate. (*In re Estate of Grant* (1980), 83 Ill. 2d 379, 381, 415 N.E.2d 416, 417.) In construing the instant will we must presume that testator was aware of this difference, and used the phrase "inheritance tax" in its proper sense (see *Gridley v. Gridley* (1948), 399 Ill. 215, 223, 77 N.E.2d 146, 150), because the will does not indicate that testator understood it otherwise. See generally Annots., 37 A.L.R.2d 7, 83 (1954), and 69 A.L.R.3d 122, 354 (1976).

Appellants suggest that testator's reference to "net" bequests and devises in paragraph Seventeenth shows testator's intent that each beneficiary pay the taxes associated with his respective bequest or devise, with the exception of inheritance tax which is dealt with as an express exception. The trouble with interpreting testator's reference to "net" is its uninformative context. Obviously, each beneficiary is to receive a "net" devise or bequest. However, by definition, whatever a given beneficiary actually receives is a "net" bequest or devise, regardless of whether that beneficiary shoulders any tax burden. The reference to "net" in paragraph Seventeenth is a truism, of no help in ascertaining testator's intent with respect to the estate tax. We agree with appellants that the interpretation they suggest is one possible interpretation, but if testator meant what they contend she meant, she could have stated it clearly. An equally plausible interpretation of paragraph Seventeenth is that beneficiaries should be held harmless with respect to the inheritance tax, while the second clause states whom shall assume that burden if any.

Appellants also suggest that we apply the maxim "expressio unius est exclusio alterius"; apparently we are to conclude that since paragraph Seventeenth directs only that the inheritance tax be paid from the residue, the estate tax which is not mentioned was not intended to come from that source. While the argument is persuasive, one might also conclude that testator intended that matters not mentioned be handled as is customary. Customarily, the burden of the estate tax is on the residue.

Appellants also suggest that testator could not have intended that the residuary requests be nullified in favor of appellees herein. The answer is that residuary bequests consist of what is left, if anything. Testator could have provided specific bequests in favor of appellants,

as was done in paragraph Thirteenth in favor of St. Paul United Church of Christ. That testator did not do so is also indicative of her intentions with respect to appellants.

In summary, we find no indication of testator's intention in the instant will sufficient to cause us to deviate from the general rule that the residue of the estate be first charged with the burden of estate taxes.

For the foregoing reasons, the judgment of the circuit court of Monroe County is affirmed.

Affirmed.

JONES and HARRISON, JJ., concur.